UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY EDWARD OLSON,

          Plaintiff,

  v.                                  Case No. 14-CV-425

ANTHONY MELI,

          Defendant.

## ORDER

Plaintiff Jeffrey Edward Olson, a Wisconsin state prisoner, filed this action pro se pursuant to 42 U.S.C. § 1983. On June 18, 2014, United States Magistrate Judge Patricia J. Gorence granted Olson's petition for leave to proceed *in forma pauperis* on an Eighth Amendment claim against defendant Anthony Meli based on allegations that the disruptive behavior of another inmate had disrupted Olson's sleep for over ten months and that Meli refused to remedy the situation.[1] Meli has filed a motion for summary judgment. For the reasons explained herein, the court will grant Meli's motion for summary judgment for failure to exhaust administrative remedies and dismiss this case without prejudice.

---

[1] The case was reassigned to this Court on September 4, 2014.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

## SUMMARY JUDGMENT STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**FACTS[2]**

Olson has been incarcerated at the Waupun Correctional Institution (WCI) since October 26, 2011. (DPFF ¶ 7.) Meli is the security director at WCI. (DPFF ¶ 1.) Inmate Theodore Oswald was housed in Cell 45 of the Southwest Cell Hall from May 15, 2013, to April 10, 2014.[3] (DPFF ¶ 8.) Olson was moved into Cell 46 of the Southwest Cell Hall on May 30, 2013, and remained there until being moved to the North Cell Hall on September 25, 2014. (DPFF ¶ 9.)

During the time period relevant to this case, Olson worked in the prison's wood shop Monday through Friday. (DPFF ¶ 10.) Each day he was removed from his cell at approximately 7:45 a.m. and worked until 11:00 a.m., when he returned to his cell for lunch and inmate count. He went back to work from 12:30 p.m. until 3:00 p.m. (*Id.*)

On February 26, 2014, Olson completed two documents, an Interview/Information Request form and an offender complaint, complaining about

---

[2] Relevant facts are taken from the Defendant's Proposed Findings of Fact, the Plaintiff's Response to the Defendant's Proposed Findings of Fact, the plaintiff's affidavit dated April 18, 2104 (ECF No. 62-1 at 1-2), the plaintiff's affidavit dated January 17, 2015 (ECF No. 62-1 at 3-4), and the plaintiff's "second affidavit" (ECF No. 64).

[3] Olson disagrees with this statement but his cited evidence does not support his assertion. (*See* ECF No. 68 at 3-4.)

Inmate Oswald. He directed the Interview/Information Request form to the attention of Meli, the prison's security director. (Meli Aff. ¶ 10, Exh. 1000 at 1.) In it, Olson explained that he worked in the wood shop with "potentially dangerous power tools" that should not be operated when the operator is tired. *Id.* Olson stated that Inmate Oswald had been making noise between 1:00 a.m. and 5:00 a.m., which woke him up "on more than several occasions." *Id.* Captain O'Donovan, the Southwest Cell Hall captain, was assigned to respond to Olson's request form. *Id.* Because Captain O'Donovan did not work the overnight shift and, therefore, was unable to respond to Olson to verify whether the behavior was actually taking place, or do anything to stop it, he responded to the request in writing, indicating that it was being forwarded to third shift staff, noting that the alleged behavior was occurring between 1:00 a.m. and 5:00 a.m. *Id.*

Olson disputes that Captain O'Donovan responded in writing. According to Olson, Captain O'Donovan never responded to his February 26, 2014, Interview/Information Request form. (*See* Olson's Response to DPFOF ¶ 13.)

On February 26, 2014, Olson also completed an offender complaint. In the complaint, Olson alleged that prison staff refused to address a serious threat to institutional security and order because they failed to address the noise allegedly made by Inmate Oswald in the overnight hours, and failed to move him to a different housing unit and/or institution. (DPFF ¶ 35.)

4

On March 3, 2014, James Muenchow, the prison's Institution Complaint Examiner, returned Olson's complaint to him, indicating that it was being returned because, pursuant to Wis. Admin. Code §310.09(4), he first needed to attempt to resolve the issue by contacting Third Shift Commander Vander Werff. (Muenchow Aff. ¶12, Exh. 1004.) Muenchow further advised Olson that, in the event he felt that Captain Vander Werff did not address the issue to his satisfaction, he had the opportunity to resubmit his complaint. (DPFF ¶ 38.) Muenchow requested that Olson include any correspondence to and/or from Vander Werff with his resubmission. *Id.* Olson was directed to inform the WCI Complaint Department that he was resubmitting his complaint for review, and to use the original complaint form. *Id.*

Thereafter, Olson apparently did try to contact Vander Werff, describing his attempts as follows:

> After receiving the ICRS complaint returned by Muenchow, I attempted several times to contact Captain Verder Werff.
>
> On several occasions, after listening to Inmate Oswald slam his locker repeatedly between 11:00 p.m. and 5:00 a.m., I requested the unit officers responding to the nurses to inform Captain Vander Werff that I wanted to talk with him.
>
> The officers returned to my cell door, and informed me that Vander Werff did not want to talk with me, and if I continued to insist I would be removed to segregation per his orders, for disruptive conduct.
>
> On at least two occasions, I sent Captain Vander Werff Interview/Information Request forms. They were never responded to, by anyone.

5

(Second Affidavit of Jeffrey E. Olson ¶¶ 1-5, ECF No. 64 at 1.)

On March 29, 2014, Olson submitted a second Interview/Information Request form, complaining that he heard Inmate Oswald yelling in his cell at 4:35 a.m. that morning. (Meli Aff. ¶ 12, Exh. 1001.) He claimed that the yelling occurred every other early morning, together with locker slamming and other outbursts during the night. *Id.* Olson stated that he had written to two other staff members, spoke to several others, and had "written to Captain Vander Werff, all to no avail." He had been told to "bear with it." *Id.*

According to Meli, O'Donovan responded in writing once again, advising Olson that staff members were aware of his complaints and would issue a conduct report if they caught Inmate Oswald exhibiting such behavior. *Id.* Olson denies that O'Donovan responded to his Interview/Information Request form. (*See* Olson's Response to DPFOF ¶ 15.)

For reasons that are not clear, even though Olson submitted a second Interview/Information Request form, he did not submit a second complaint.

Olson asserts that, four days after he filed this lawsuit, Vander Werff threatened him and attempted to intimidate him to stop his legal actions. Specifically, Olson avers:

> On Friday 11 Apr 2014, at approximately 9:30 AM, while I was at my institutional job in the WCI Wood Shop, I was approached by the security officer (CO Schnieder) and told by her that I needed to go with her. As I proceeded to my work area to secure my tools, I was approached by a Captain Vander Werff. Captain Vander Werff asked, "Are you Olson?" in an angry manner and tone of voice. Captain Vander Werff continued

6

with, "Come with me . . . I'm going to yell at you." I followed Captain until he stopped at the entry area to the Wood Shop, this area is not covered by the security cameras. The Captain then turned towards me and proceeded to berate me for continuing to write to the administration <u>and others</u> about being subject to the disruptive actions of another inmate, Theodore Oswald, every morning between 12AM and 6AM. Captain Vander Werff used profanity about Oswald, calling him an "Asshole." The Captain also used profanity about me, calling me a "Pain in the ass" because of my contacting the administration <u>and others</u> about Oswald's disruptive actions.

Captain Vander Werff told me I needed to stop writing to people about the Oswald issue, telling me that I could face disciplinary action if I continued.

Captain Vander Werff's conduct, manner, tone of voice, gestures, and statements were threatening and I consider them to be an attempt at intimidation to stop my legal actions.

I had recently submitted, to the WCI library, for "E-filing," the original complaint for this action, on April 7, 2014.

I believe that Captain Vander Werff was sent to "discuss" with me about the Oswald incidents only on account of the legal action I had initiated.

(Affidavit of Jeffrey E. Olson, April 18, 2014, ECF No. 62-1 at 1-2) (emphasis in original).

The Housing Unit Rules dictate that inmates may not participate in any noisy or disturbing activities. (DPFF ¶ 16.) Security staff enforce the rules when they are present to witness such behavior, warning the inmate when necessary by documenting it on his warning card or, in the alternative, issuing a written conduct report. (DPFF ¶ 17.) A progressive discipline system is encouraged for minor conduct/behavior issues when warranted. *Id.*

WCI is a very regimented, highly supervised and secure institution, with security staff making regular rounds of all living units as well as work sites, recreation, and the library. (DPFF ¶ 18.) No Incident Reports were prepared related to excess noise made by Inmate Oswald during the time period relevant to this action.[4] (DPFF ¶ 20.)

## DISCUSSION

Meli contends that Olson failed to exhaust his administrative remedies before bringing this lawsuit. He also contends that the facts establish that Olson's Eighth Amendment rights were not violated because Olson was not subjected to cruel and unusual punishment due to noise. In response, Olson contends that this case should not be dismissed for failure to exhaust his administrative remedies because he attempted to do so but was threatened with disciplinary action if he persisted. He also contends that genuine issues of material fact preclude summary judgment on the merits of his Eighth Amendment claim.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corr.*,

---

[4] The plaintiff disputes this proposed fact, asserting that Meli has refused to disclose relevant discoverable documents related to excessive noise made by Inmate Oswald during his period of incarceration at WCI. According to Olson, he has seen Incident Reports and Conduct Reports that were written by WCI security staff. (Olson Aff. of Jan. 17, 2015, ECF No. 62-1 at 3-4.) Olson also asserts that several inmates have informed him that they wrote to security staff, including Meli, regarding the noise made by Inmate Oswald. *Id.*

8

Case 2:14-cv-00425-WED Filed 07/23/15 Page 8 of 14 Document 69

182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Prison Litigation Reform Act requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that, before an inmate may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin.

Code § DOC 310.09(6). "Prior to accepting the complaint, the ICE may direct the inmate to attempt to resolve the issue." Wis. Admin. Code § DOC 310.09(4).

After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority's decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

In this case, it is undisputed that Olson submitted a complaint related to his claim on February 26, 2014. On March 3, 2014, the ICE returned the complaint to Olson with instructions that he must first attempt to resolve the issue with Captain Vander Werff. The ICE also directed Olson that, if Captain Vander Werff did not satisfactorily address the issue, Olson could resubmit his complaint. Olson does not dispute that he did not refile his complaint. Nevertheless, he asserts that he attempted to exhaust his

10
Case 2:14-cv-00425-WED   Filed 07/23/15   Page 10 of 14   Document 69

administrative remedies but that he was threatened with disciplinary action if he persisted.

Inmates are not required to exhaust all administrative remedies – only those that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). For example, if grievances must be filed on a particular form, but the forms are not provided, then there is no "available" remedy, despite its hypothetical possibility. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). In addition, "[a] remedy is not available . . . to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (collecting cases). In *Schultz*, the Court of Appeals for the Seventh Circuit noted that the law governing the unavailability of prison remedies on intimidation grounds was in "some disarray" and that, while the different standards of "objective" and "subjective" availability were reasonably well specified, it was unclear whether a prisoner was required to satisfy both standards in every case:

> The "objective" standard, which predominates in the case law, requires the plaintiff to show that a person of "ordinary firmness" would have been deterred from filing a grievance. *E.g., Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). The "subjective" standard requires the plaintiff to show that he was in fact deterred. *E.g., Turner v. Burnside, supra*, 541 F.3d at 1085. Cases that embrace the subjective standard add it to the objective one rather than substituting it, e.g., *id.*; *Tuckel v. Grover, supra*, 660 F.3d at 1254, with the result that the plaintiff must show both that a person of ordinary firmness would be deterred and that he himself was deterred. The additional test catches the person of more than ordinary firmness

> who, not having in fact been deterred, has no excuse for failing to exhaust administrative remedies; he was not a victim of intimidation, but only of an attempt at intimidation that failed.

*Id.* at 621.

In order to exhaust his administrative remedies, Olson would have had to resubmit his complaint as directed, *see Woodford*, 548 U.S. at 93, and complete the exhaustion process before commencing this action, s*ee* 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 738-39 (2001). Olson cites to two of his affidavits in support of his assertion that alleged threats and intimidation prevented him from exhausting.

First, Olson alleges that on several occasions after his complaint was returned to him on March 3, 2014, he asked unit officers to inform Captain Vander Werff that he wanted to talk with him. (Second Affidavit of Jeffrey E. Olson ¶¶ 1-5, ECF No. 64 at 1.) According to Olson, the officers informed him that Vander Werff did not want to talk with him and that if he continued to insist he would be sent to segregation for disruptive conduct. Olson does not indicate when the officers told him that Vander Werff did not want to speak with him. Presumably, it was before Vander Werff came and saw him personally on April 11, 2014. In any event, the court need not determine the exact timeline. Whenever it happened, Olson obviously was not deterred from continuing to pursue his claim that Oswald was being disruptive by filing the Interview/Information Request form. He simply did not pursue it by resubmitting his complaint to the ICE officer.

In his other affidavit, Olson alleges that on April 11, 2014, Captain Vander Werff told him that he "needed to stop writing to people about that Oswald issue, telling [him] that [he] could face disciplinary action if [he] continued." Olson could have reasonably interpreted this statement to mean that he should not submit another complaint under the ICRS. However, by the time Vander Werff made this threat, Olson had already filed this lawsuit. Although the actual filing date of this lawsuit is April 11, 2014, Olson admits that he submitted his complaint commencing the suit on April 7, 2014. Because inmates must exhaust their administrative remedies before filing suit, s*ee* 42 U.S.C. § 1997e(a); *see also Booth*, 532 U.S. at 738-39, Vander Werff's threat obviously was not the cause of Olson failing to exhaust his administrative remedies.

It is not clear why Olson did not resubmit his offender complaint. There is no indication that complaint forms were unavailable. Based on the record, no reasonable fact-finder could conclude that administrative remedies were unavailable to Olson to prevent him from refiling his complaint as directed. The failure to resubmit his complaint means that he failed to exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90, 93 (PLRA requires "proper exhaustion" which "means using all steps that the agency holds out and doing so *properly*") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (emphasis in original)).

The undisputed facts reveal that Olson failed to exhaust administrative remedies before filing suit. Accordingly, the court will grant Meli's motion for summary

judgment on that basis and dismiss this case without prejudice.  *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment (ECF No. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Dated at Milwaukee, Wisconsin this 23rd day of July, 2015.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

14
Case 2:14-cv-00425-WED   Filed 07/23/15   Page 14 of 14   Document 69